# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

RONNIE PETTWAY,       )
    Plaintiff,       )
               )
v.       )    CIVIL ACTION NO. 1:22-00371-KD-N
               )
FLOYD JAMAL PETTWAY, *et al.*,       )
    Defendants.       )

## REPORT AND RECOMMENDATIONS

Pending before the Court in the above-styled civil action are three motions to dismiss,[1] either in whole or part, the allegations of the complaint filed by Plaintiff Ronnie Pettway ("Mr. Pettway") on September 16, 2022. (Doc. 1). This Report and Recommendation (R&R) addresses each of the following:

1) Defendant Mobile City Council's ("City Council") motion to dismiss (Doc. 7);

2) Defendant Warden of Mobile Metro County Jail Noah Price Oliver III's ("Warden Oliver") motion to dismiss (Doc. 8); and,

3) The motion to dismiss filed by the "City Defendants"[2] (Doc. 24).

Plaintiff's complaint proceeds pursuant to 42 U.S.C. § 1983 and includes ten separate counts, collectively asserting both state and federal claims against varying

---

[1] The District Judge assigned this to case has referred these motions to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(a)-(b), Federal Rule of Civil Procedure 72 and S.D. Ala. GenLR 72(a); *See* S.D. Ala. GenLR 72(b) (12/2/2022, 12/13/2022, 12/15/2022, 12/22/2022, 12/29/2022 electronic references).

[2] The "City Defendants" include: former Chief of the Mobile Police Department ("MPD") Lawrence L. Battiste, IV ("Chief Battiste"), former Commander of the MPD's Fourth Precinct Rodney Greeley ("Cmdr. Greeley"), former MPD Officer Tabitha Lamar ("Officer Lamar"), the City of Mobile ("The City"), MPD Officer Floyd Pettway ("Officer Pettway"), MPD Lieutenant Lee Pierce ("Lt. Pierce"), MPD Officer Rodrick Sheldton (identifying as Roddrex Shelton) ("Officer Shelton"), Mayor of Mobile William Stimpson ("Mayor Stimpson") and MPD Sergeant/Custodian of Records John Young ("Sgt. Young").

groups of the 11 named defendants (along with unidentified Fictitious Defendants).

The counts and causes of action as set out in Plaintiff's complaint include:

- **Count I**: Asserts a Fourth Amendment claim of unlawful arrest and seizure against Officers Pettway, Lamar and Shelton in their individual capacities, as well as Fictitious Defendants in their individual and/or official capacities.

- **Count II**: Asserts a Fourth Amendment claim of malicious prosecution against Officers Pettway, Lamar and Shelton in their individual capacities, Sgt. Young in his individual and official capacities, The City (via Count VI) and the Mobile Police Department ("MPD").

- **Count III**: Asserts a Fourth Amendment claim of excessive force against Officers Pettway and Lamar in their individual capacities, as well as Fictitious Defendants in their individual and/or official capacities.

- **Count IV**: Asserts a Fourteenth Amendment claim of failure to intervene against Officer Lamar in her individual capacity, as well as Fictitious Defendants in their individual and/or official capacities.

- **Count V**: Asserts a Fourteenth Amendment claim of deliberate indifference to medical needs against Warden Oliver in his individual and official capacities.

- **Count VI**: Asserts a claim of municipal liability against The City pursuant to *Monell*[3] for alleged discriminatory, unconstitutional and illegal practices by the MPD.

- **Count VII**: Brings a state law assault and battery claim against Officers Pettway, Lamar and Shelton in their individual capacities, as well as Fictitious Defendants in their individual and/or official capacities.

- **Count VIII**: Brings a state law intentional infliction of emotional distress ("IIED") claim against Officers Pettway, Lamar and Shelton in their individual capacities, Lt. Pierce in his individual capacity, Warden Oliver in his individual and official capacities, the MPD, as well as Fictitious Defendants in their individual and/or official capacities.

- **Count IX**: Asserts a combined state law claim for false arrest and/or malicious prosecution against Officers Pettway, Lamar and Shelton in their individual capacities, the MPD and Fictitious Defendants in their individual and/or official capacities.

---

[3] *Monell* and its progeny set out when local governments may be sued pursuant to 42 U.S.C. § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

- **<u>Count X</u>**: Asserts a state law claim of trespass to chattels and/or conversion against Officers Pettway, Lamar and Shelton in their individual capacities, the MPD and Fictitious Defendants in their individual and/or official capacities.

(*See generally*, Doc. 1).

Upon consideration, and for the reasons stated herein, the undersigned **RECOMMENDS** the City Council's motion to dismiss (Doc. 7) be **GRANTED**, Warden Oliver's motion to dismiss (Doc. 8) be **GRANTED**, and the City Defendants' partial motion to dismiss (Doc. 24) be **GRANTED**. Accordingly, Counts I, III, IV, V, VI, VII, VIII, IX and X are due to be **DISMISSED with prejudice** as to all Defendants therein named.

## I.    *Procedural History*

Plaintiff initiated this civil 42 U.S.C. § 1983 action by filing a complaint in this Court on September 16, 2022. (Doc. 1). Upon filing, this case was directly assigned to the undersigned pursuant to S.D. Ala. GenLR 73(c).[4] Summons were issued as to all named Defendants on September 22, 2022. (Doc. 5).

On October 17, 2022, Warden Oliver and the City Council both filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) through their respective counsel(s). (Docs. 7, 8, 9). The Court set briefing on both motions (Doc. 11), and Plaintiff filed a timely opposition response to Warden Oliver's motion on November 7, 2022 (Doc. 12), though he did not respond to the City Council's motion. Warden Oliver timely replied (Doc. 13), as did the City Council, despite the lack of an

---

[4] In accordance with 28 U.S.C. § 636(c), the local rules of this Court provide that full-time Magistrate Judges in this District are to be randomly assigned a percentage of the Court's civil docket. *See* S.D. Ala. GenLR 73.

opposition response from Plaintiff. (Doc. 14). Both motions (Docs. 7, 8) were taken under submission on November 18, 2022.

However, as of November 28, 2022, the City Defendants had yet to file anything with the Court or otherwise demonstrated an intent to defend against this action. Thus, on November 28, 2022, the undersigned entered an order explaining...

> ... because the nine defendants mentioned above have not yet formally consented to the undersigned's jurisdiction, a ruling on the pending motions to dismiss is premature. However, even without an executed consent to jurisdiction form, duties authorized to be performed by Magistrate Judges include: "[s]upervising and determining all pretrial proceedings and motions made in civil cases including, without limitation, rulings upon all procedural and discovery motions, and conducting pretrial conferences; except that a Magistrate Judge (absent the consent of all affected parties) may not ... enter any other order or judgment dispositive of a claim or defense, but may make reports and recommendations to that District Judge concerning them." S.D. Ala. GenLR 72(a)(2)(S).
>
> Under the Federal Rules of Civil Procedure, "[a] defendant must serve an answer ... within 21 days after being served with the summons or complaint; or if it has timely waived service under Rule 4(d) within 60 days after the request for a waiver was sent..." Fed. R. Civ. P. 12(a)(1)(A)(i)-(ii). And further, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).
>
> In the present case, Defendants Pettway, Lamar, Shelton, Pierce, Greeley and the City of Mobile were each served with summons on September 29, 2022. (*See* Doc. 10). Thus, unless service was waived (and in this case, it was not), any responsive pleading was due from them by October 20, 2022. To date, no responsive pleadings have been filed by these Defendants. Similarly, Defendants Young and Battiste, who were served on September 28, 2022, have also not filed any responsive pleadings, and any filings from these two Defendants were due by October 19, 2022. Finally, Defendant Mayor Stimpson, who was served October 3, 2022, had until October 24, 2022, to file any responsive pleading – however, nothing has been filed.

(Doc. 15, PageID.168-69). *See* S.D. Ala. GenLR 73(c)(2)-(6). Consequently, the undersigned instructed Plaintiff to show cause as to why he had not filed an application for entry of default and default judgment. (Doc. 15).

Plaintiff timely complied, filing a motion for entry of default and default judgment on December 1, 2022. (Doc. 16). The City Defendants filed their first motion with the Court this same day (Doc. 17), collectively asserting service had not been perfected as to the nine City Defendants and requesting an extension of time "to file a brief in response to the motion for default, as well as a motion to dismiss (and accompanying brief), addressing insufficient service of process, as well as dismissal on other grounds." (Doc. 17, PageID.175).[5] The undersigned granted the motion for extension and entered a briefing order on the motion for entry of default and default judgment on December 2, 2022. (Docs. 21, 22). The parties fully briefed the default motion (Docs. 23, 25, 30, 34), though service was subsequently perfected (Docs. 27, 28, 29, 32, 33), and Plaintiff sought to withdraw the motion on December 15, 2022. (Doc. 34). Judge DuBose endorsed withdrawal of Plaintiff's default motion by text-only order dated December 20, 2022. (Doc. 35; electronic reference 12/20/2022).

Prior to the resolution of the default motion, the City Defendants filed a partial motion to dismiss on December 8, 2022. (Doc. 24). The undersigned set briefing on this motion, setting it to be taken under submission December 30, 2022. (Doc. 26). Plaintiff timely filed a response in opposition (Doc. 36), and the City Defendants

---

[5] Upon Plaintiff's filing of the motion for entry of default and default judgment, this case was reassigned to District Judge Kristi K. DuBose. *See* S.D. Ala. GenLR 73(c). (Doc. 18). Judge DuBose subsequently referred the outstanding motions to dismiss to the undersigned for appropriate action pursuant to S.D. Ala. GenLR 72(b); (12/2/2022 electronic reference).

timely replied. (Doc. 37). Each of the three motions to dismiss (Docs. 7, 8, 24) are now been fully briefed and ripe for disposition.

## II. *Factual Background*

According to Plaintiff's complaint,[6] while driving home from a local nightclub during the early morning hours of September 23, 2018, Mr. Pettway noticed he had a flat tire. (Doc. 1, PageID.9). Needing to get his tire fixed, but knowing nothing would be open until morning, he pulled into the parking lot of a Spectrum Automotive & Tire Solutions ("Spectrum Auto"). After pulling into the lot, Mr. Pettway fell asleep in his car and awoke a few hours later needing to use the restroom. (*Id.*). Spectrum Auto was still not open, so he walked to the nearby Shogun Japanese Steakhouse ("Shogun"), hoping they might let him use their restroom. (*Id.*). Mr. Pettway attempted to enter the restaurant, but the door was locked, and Shogun employees told him to go away. (Doc. 1, PageID.10). Mr. Pettway then returned to Spectrum Auto, where he sat on a tire out front while waiting for the store to open. (*Id.*). At or around this same time, someone from Shogun called the MPD, "reporting what Defendant Officer Jamal Pettway described as a 'disorderly conduct or attempted burglary' complaint." (*Id.*). Mr. Pettway was unaware this call had been placed. (*Id.*).

MPD Officers Pettway and Lamar were the first to respond to the call. (*Id.*). As soon as the officers arrived, Mr. Pettway avers Officer Pettway "jumped out of his vehicle, weapon drawn," yelled at him to get on the ground, and then tased him before giving Mr. Pettway an opportunity to comply. (Doc. 1, PageID.10-11, 17-19, 21-23).

---

[6] Those facts presented here are accepted as true and construed in the light most favorable to Plaintiff. *Speaker v. United States HHS CDC & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).

Upon being struck with the taser darts, Mr. Pettway "fell forward onto his face, cracking his eye socket on the asphalt." (Doc. 1, PageID.11). Mr. Pettway states he suffered serious injury as a result, including a cracked eye socket and damage to his face and head, which resulted in "substantial bleeding." (Doc. 1, PageID.24).

Shortly thereafter, additional MPD officers began to arrive on scene, including Officer Shelton, (Doc. 1, PageID.11), and Mr. Pettway claims Officer Pettway began to fabricate evidence and a false narrative against him to justify the use of force. (Doc. 1, PageID.11, 20). This included Officer Pettway telling other officers Mr. Pettway was intoxicated, acting aggressive and not complying with orders. (Doc. 1, PageID.12, 20). Further, Mr. Pettway asserts "while he was lying helpless, bleeding on the ground," that Officer Shelton and/or Lt. Pierce (along with additional unidentified officers) planted cocaine in Mr. Pettway's wallet. (Doc. 1, PageID.13-14, 20, 23). Mr. Pettway was placed under arrest shortly thereafter, and during a search incident to arrest, cocaine was discovered in his wallet. (Doc. 1, PageID.13-14, 20, 23). Mr. Pettway asserts he does not use illegal drugs, including cocaine. (Doc. 1, PageID.13). Mr. Pettway was ultimately charged with possession of a controlled substance, public intoxication and failure to obey police. (Doc. 1, PageID.13-14).

Officers Pettway and Lamar then transported a handcuffed Plaintiff to Providence Hospital for evaluation. (Doc. 1, PageID.15). Despite the seriousness of his injuries, Mr. Pettway asserts the officers failed to secure adequate medical care for him at Providence. (*Id*.). Officers Pettway and Lamar then took Mr. Pettway to Mobile Metro County Jail ("MCMJ"), where he was held for three days without

adequate medical treatment before his release on September 26, 2018. (Doc. 1, PageID.15). Mr. Pettway also adds the officers failed to secure his vehicle upon arrest, resulting in damage to his personal property. (Doc. 1, PageID.14). On September 25, 2018, Plaintiff filed a citizen's complaint with the MPD's internal affairs unit against Officers Pettway and Lamar for use of excessive force during Plaintiff's arrest and damage to his personal property. (Doc. 1, PageID.16). Lt. Pierce investigated and concluded Officers Pettway and Lamar properly conducted themselves. (*Id*.).

Plaintiff was subsequently indicted by a grand jury on September 20, 2019, based on charges from the September 23, 2018, incident. (Doc. 1, PageID.4). These charges were nolle prossed on March 17, 2021. (Doc. 1, PageID.4). Mr. Pettway avers his indictment was based on fraudulent evidence, including a police report signed by Officer Lamar which "accused Plaintiff of admitting to using cocaine and using racially charged language," and an arrest warrant furthering this false narrative, despite body camera footage to the contrary. (Doc. 1, PageID.13, 20). Mr. Pettway adds this body camera footage was subpoenaed on March 5, 2020, but that Sgt. Young "refused to comply with a court order," and instead stated that the video "does not exist, has never existed, or no longer exists." (Doc. 1, PageID.17, 20). In addition to his claims against the individual officers, Plaintiff asserts The City's policies, customs or practices were the cause and moving force behind the violation of his Fourth, Eighth and Fourteenth Amendment rights by MPD officers on the date of his arrest, as well those constitutional violations occurring thereafter. (Doc. 1, PageID.25-28).

### III. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (citation omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged … [This standard] asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 555, 557 (second brackets in original). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "In ruling on a 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the [non-movant]." *Speaker v. United States HHS CDC & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (citing *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003)).

## IV. *Analysis*

Mr. Pettway's complaint proceeds pursuant to 42 U.S.C. § 1983 and brings both state and federal claims against various groups of the 11 Defendants named in this action (along with unidentified Fictitious Defendants). However, before proceeding with analysis of the motions to dismiss, several items require mentioning. First, during briefing, the parties stipulated and/or conceded to dismissal of the following claims and Defendants:

- All claims against Officer Lamar, who passed away in October 2021 prior to initiation of this action. (Doc. 24, PageID.192, 205; Doc. 36, PageID.249; Doc. 37, PageID.266).

- All claims against Cmdr. Greeley, Sgt. Young, Chief Battiste and Mayor Stimpson in their official capacities, as they are duplicative of claims against The City. (Doc. 24, PageID.197-98; Doc. 36, PageID.245-46; Doc. 37, PageID.266).

- Counts VIII (state law IIED claim) and IX (state law false arrest/malicious prosecution) in their entirety, as Ala. Code § 11-47-190[7] prevents intentional

---

[7] Pursuant to Ala. Code § 11-47-190:

> No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty, or unless the said injury or wrong was done or suffered through the neglect or carelessness or failure to remedy some defect in the streets, alleys, public ways, or buildings after the same had been called to the attention of the council or other governing body or after the same had existed for such an unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council or other governing body and whenever the city or town shall be made liable for damages by reason of the unauthorized or wrongful acts or negligence, carelessness, or unskillfulness of any person or corporation, then such person or corporation shall be

tort claims under a *respondeat superior* theory of liability. (Doc. 24, PageID.203-04; Doc. 36, PageID.248; Doc. 37, PageID.266).

- All claims against Warden Oliver in his official capacity, as barred by Eleventh Amendment and/or sovereign immunity. (Doc. 7, PageID.99; Doc. 8, PageID.105-06; Doc. 12, PageID.156; Doc. 13, PageID.158-59).

Further, to the extent the MPD is named at various points in Plaintiff's complaint, city police departments in Alabama are not suable entities under 42 U.S.C. § 1983. *Muhammad v. Alabama*, 2020 U.S. Dist. LEXIS 91201, *6-7 (S.D. Ala., May 21, 2020) (citations omitted). Thus, any allegations implicating the MPD are construed as being asserted against The City. Similarly construed as asserted against The City are all claims implicating "Fictitious Defendants" in their official capacities,[8] and to the extent such a claim is set out, all claims against the members of the City Council (past or present) and Mayor Stimpson in their official and/or representative

---

liable to an action on the same account by the party so injured. However, no recovery may be had under any judgment or combination of judgments, whether direct or by way of indemnity under Section 11-47-24, or otherwise, arising out of a single occurrence, against a municipality, and/or any officer or officers, or employee or employees, or agents thereof, in excess of a total $100,000 per injured person up to a maximum of $300,000 per single occurrence, the limits set out in the provisions of Section 11-93-2 notwithstanding.

[8] Fictitious party pleading is generally not permitted in federal court. *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). However, the Eleventh Circuit has recognized "that a claim may be maintained against unnamed defendants where allegations in the complaint make clear that plaintiff could uncover the names through discovery." *Bowens v. Superintendent of Miami S. Beach Police Dep't*, 557 F. App'x 857, 862 (11th Cir. 2014) (per curiam) (citing *Dean v. Barber*, 951 F.2d 1210, 1215-16 (11th Cir. 1992)). Mr. Pettway's complaint describes the unnamed "Fictitious Defendants" as MPD officers who "were present at the time Plaintiff was unlawfully arrested…" (Doc. 1, PageID.6). Those officers can be identified during discovery, so the undersigned declines to recommended dismissal of those defendant(s) solely because they are unnamed. However, to the extent Plaintiff seeks relief from those officers in their official capacities, those claims are due to be dismissed for the same reason Plaintiff conceded dismissal of official capacity claims against Cmdr. Greeley, Sgt. Young, Chief Battiste and Mayor Stimpson (*see* Doc. 36, PageID.245-46). *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("It is not a suit against the official personally, for the real party in interest is the entity.").

capacities. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("[S]uits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent.").[9] In accordance with each of the stipulations and/or concessions noted above, and with undersigned's construction of Mr. Pettway's complaint in mind, the following counts remain for disposition:

- **Count I**: Asserts a Fourth Amendment claim of unlawful arrest and seizure against Officers Pettway and Shelton individually, as well as Fictious Defendants in their individual capacities.

- **Count II**: Asserts a Fourth Amendment claim of malicious prosecution against Officers Pettway and Shelton in their individual capacities, Sgt. Young in his individual capacity and The City (via Count VI).

- **Count III**: Asserts a Fourth Amendment claim of excessive force against Officers Pettway in his individual capacity, along with Fictitious Defendants in their individual capacities.

- **Count IV**: Asserts a Fourth Amendment claim of failure to intervene against Fictitious Defendants in their individual capacities.

- **Count V**: Asserts a Fourteenth Amendment claim of deliberate indifference to medical needs against Warden Oliver in his individual capacity.

- **Count VI**: Asserts a claim of municipal liability against The City pursuant to *Monell* for alleged discriminatory, unconstitutional and illegal practices by the MPD.

- **Count VII**: Brings a state law assault and battery claim against Officers Pettway and Shelton in their individual capacities, as well as Fictitious Defendants in their individual capacities.

- **Count X**: Brings a state law claim of trespass to chattels and/or conversion against Officers Pettway and Shelton in their individual capacities and Fictitious Defendants in their individual capacities.

---

[9] Mr. Pettway's complaint does not name the individual members of the City Council (past or present); however, he refers to the City Council in the plural as "decision makers" at various points throughout. (*See* Doc. 1, PageID.3, 7-8, 27). Moreover, he asserts these "decision makers" are being sued in their "individual, representative and official capacities." (Doc. 1, PageID.7-8).

However, raised by each Defendant in their respective motions to dismiss is the threshold matter of the statute of limitations (Docs. 7, 8, 24),[10] which Mr. Pettway does not dispute has run on several of the above-noted remaining claims. (*See* Docs. 1, 12, 26). Rather, Plaintiff seeks equitable tolling for those untimely claims. (*Id*.).

## A. Equitable Tolling of the Statute of Limitations in § 1983 Cases

It is settled that "[a]ll constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008) (citing *Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985)). Plaintiff's claims are brought in Alabama; therefore, Alabama's two-year statute of limitations applies to Mr. Pettway's causes of action. Ala. Code § 6-2-38.

However, when a § 1983 claim accrues is a matter of federal law, and "the standard rule [is] that accrual occurs when the plaintiff has 'a complete and present cause of action.'" *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (citation and internal brackets omitted). *See id*. at 391 ("Under the traditional rule of accrual … the statute of limitations commences to run, when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable." (citation omitted)). Stated differently, a § 1983 claim does not accrue "until the plaintiffs know or should know (1) that they have suffered the injury that forms the basis of their complaint and (2) who has inflicted the injury."

---

[10] Eleventh Circuit precedent provides "that a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is 'apparent from the face of the complaint' that the claim is time-barred." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

*Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003). Beyond the standard rule, claims of false arrest and false imprisonment brought under § 1983 arising out of a warrantless arrest begin to accrue "when legal process was initiated against him." *Wallace*, 549 U.S. at 390 (explaining that, at this point, the false imprisonment and/or false arrest comes to an end because legal process has been initiated and therefore a complete cause of action exists). Additionally, malicious prosecution claims do not begin to accrue until termination of the relevant criminal proceedings in the plaintiff's favor. *Kelly v. Serna*, 87 F.3d 1235, 1239 (11th Cir. 1996) (citation omitted).

Mr. Pettway was arrested on September 23, 2018. (Doc. 1). He was then held at MCMJ for the following three days.[11] (Doc. 1, PageID.15). He was indicted on September 20, 2019, and his charges were nolle prossed on March 17, 2021. (Doc. 1). This action was initiated on September 16, 2022. (Doc. 1). Accordingly, Mr. Pettway's claims began to accrue on the following dates:

- For the causes of action relating to unlawful arrest and seizure – Counts I, IV (to the extent it asserts a failure to intervene claim on this basis) and VI (to the extent it asserts a *Monell* claim on this basis) – his claims began to accrue on the date legal process was initiated against him: September 20, 2019. Thus, these claims became untimely as of September 20, 2021.

- For the causes of action relating to excessive force – Counts III, IV (to the extent it asserts a failure to intervene claim on this basis), VI (to the extent it asserts a *Monell* claim on this basis) and VII – his claims began to accrue on the date of the injury: September 18, 2018. Thus, these claims became untimely as of September 18, 2020.

- For the causes of action relating to malicious prosecution – Counts II and VI (to the extent it asserts a *Monell* claim on this basis) – his claims began to

---

[11] The City Defendants' motion to dismiss notes Mr. Pettway was released on September 24, 2018 (Doc. 24, PageID.196) – just one day after his arrest, rather than three as alleged in the complaint. (Doc. 1, PageID.15). At this stage, the undersigned will accept Plaintiff's version of events that he was released on September 26, 2018. *See* n. 7.

accrue on the date of a favorable termination: March 17, 2021. Thus, these claims are timely until March 17, 2023.

- For Mr. Pettway's causes of relating to deliberate indifference to a medical need – Counts V and VI (to the extent it asserts a *Monell* claim on this basis) – his claims began to accrue, at the latest, on September 26, 2018, upon release from MCMJ. Thus, these claims became untimely as of September 26, 2020.

- For Mr. Pettway's causes of action for trespass to chattels and/or conversion – Counts X and VI (to the extent it asserts a *Monell* claim on this basis) – his claims began to accrue from the date he learned of the damage to his vehicle. Because the complaint does not provide when this information was learned (*i.e.*, when Mr. Pettway discovered the damage to his vehicle), the undersigned will infer the date of accrual to be on or about September 26, 2018 (the day he was released from MCMJ). Thus, the limitations period on this claim lapsed on or about September 26, 2020.

Plaintiff initiated this action on September 16, 2022 (Doc. 1); thus, pursuant to Alabama's two-year statute of limitations, Ala. Code § 6-2-38, Counts I, III, IV, V, VI (in all respects other than malicious prosecution), VII and X are untimely. However, Mr. Pettway argues equitable tolling should be applied.

Because the statute of limitations applied in § 1983 actions is based upon the relevant state law, so too are the provisions governing whether such limitation periods can or should be tolled. *See Bd. of Regents v. Tomanio*, 446 U.S. 478, 483 (1980) (noting that when a federal court applies a state statute of limitations, it also applies state rules for tolling). In Alabama, "'a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' as to the filing of his action." *Weaver v. Firestone*, 155 So. 3d 952, 957 (Ala. 2013) (citation omitted). Whether tolling should apply is a fact-specific inquiry, and "consideration must be given as to whether principles of equity would make the rigid application of

a limitation period unfair." *Id.* at 958 (citations, internal quotation and brackets omitted). The Alabama Supreme Court has stated "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule[;]" however, "equitable tolling is available in extraordinary circumstances that are beyond the petitioner's control and that are unavoidable even with the exercise of diligence." *Ward v. State*, 46 So. 3d 888, 897 (Ala. 2007) (citation omitted). *See Weaver*, 155 So. 3d at 958 (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)) ("We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." (footnotes omitted)).

In support of his position that tolling should be applied to his otherwise untimely claims, Mr. Pettway pre-emptively asserts in his complaint:

> Due to the malicious prosecution of Plaintiff Ronnie Pettway based upon fraudulent evidence and to preserve his Fifth Amendment and other Constitutional rights during the course of said prosecution, Plaintiff was unable to bring this action for said unlawful arrest thus equitably tolling the statute of limitations during the pendency of the wrongful prosecution against him, which case was dismissed on March 17, 2021.

(Doc. 1, PageID.19). Plaintiff further argues within the body of Count II that "[a]s a result of the malicious prosecution of Plaintiff Ronnie Pettway by the Defendants and each of them, Plaintiff's freedom was curtailed and his opportunities were limited during the prosecution." (Doc. 1, PageID.21).

Each motion to dismiss addresses Plaintiff' pre-emptive assertion that his untimely claims should be equitably tolled. (Docs. 7, 8, 9, 24). The City Council's motion characterizes the untimely nature of Plaintiff's claims as fatal, notes Mr. Pettway's complaint cites no authority for the proposition that a malicious prosecution claim tolls other constitutional tort causes of action and points the undersigned to *Wallace*, 549 U.S. at 393-97. (Doc. 7, PageID.88-91). Similarly, Warden Oliver contends tolling should not be applied because Mr. Pettway has not carried his burden of establishing both a diligent pursuit of his rights and the presence of extraordinary circumstances standing his way, as is required pursuant to *Ward*, 46 So. 3d at 897. (Doc. 9, PageID.102-05). The City Defendants echo Warden Oliver's argument that Mr. Pettway fails to allege sufficient facts to warrant tolling pursuant to *Ward*'s prongs and summarizes their primary point in stating, "[t]he fact that Plaintiff has also included a malicious prosecution claim [Count II] does not save the other Federal Counts, which are clearly barred by the statute of limitations and not subject to equitable tolling." (Doc. 24, PageID.197). Each motion argues the untimely claims are not entitled to tolling and should be dismissed as time-barred. (Docs. 7, 8, 9, 24).

In his opposition response to Warden Oliver's motion to dismiss, Mr. Pettway states:

> Plaintiff believes and avers that at all times relevant from the time of his unlawful arrest to the full dismissal of his charges, that the named police officers, in conjunction with the City of Mobile and the Office of the District Attorney for Mobile County conspired to delay the dismissal of Plaintiffs charges, in order to allow the statute of limitations to pass for the officer liable for his injuries. At all times relevant to the claims

alleged in the complaint, Plaintiff diligently pursued his rights while also attempting to insulate himself from further prejudice and malicious conduct in the State's prosecution against him.

(Doc. 12, PageID.154). Seeking to counter Warden Oliver's assertion that Mr. Pettway had not diligently pursued his rights, Plaintiff characterizes Warden Oliver's position as "essentially demand[ing] that Plaintiff ought to have prejudiced his criminal proceeding by notifying Defendants of his intent to bring a civil suit." (Doc. 12, PageID.155). As such, Mr. Pettway avers "the demanded actions would have been tantamount to compelling Plaintiff to testify against himself in contravention to the rights established in the United States Constitution." (*Id.*). Therefore, "Plaintiff had no choice but to allow the statute of limitations to pass while he defended himself against a conspiracy of the state." (*Id.*).

Mr. Pettway's response in opposition to the City Defendants' motion essentially makes the same core argument, though he includes additional discussion relating to the Fifth Amendment privilege. (Doc. 36, PageID.242-45). Further, this filing characterizes the State's litigation decisions – including an alleged "delay in producing discovery," prosecutor reassignments and a motion to quash filed by the City – as resulting in the passage of the limitations period "through no fault of Mr. Pettway." (Doc. 36, PageID.244). Plaintiff then goes on to proffer a seemingly policy-based argument, and after noting what he perceives as an unfair discrepancy between the State's ability to bring criminal charges for a five-year period while a civil § 1983 claimant is limited to a two-year statutory window, declares that "no person ought to be faced with the decision between justice and freedom." (Doc. 36, PageID.244-45).

Mr. Pettway urges the Court that he was faced with a choice between two bad options – he could either: (1) timely bring his claims, which would risk prejudicing his own interests (favorable termination of his criminal case and preservation of his Fifth Amendment rights), or (2) wait until favorable termination of his case, thereby ensuring his Fifth Amendment rights were protected, but also risking a denial of a remedy based upon the applicable statute of limitations. (Doc. 36, PageID.245.).

Despite Plaintiff's characterization of this choice as a "dystopian election of remedies," (Doc. 36, PageID.245), Mr. Pettway's circumstances were not novel – nor extraordinary. Indeed, Justice Scalia – writing for the *Wallace* majority – posits that "equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an *entirely common state of affairs*." 549 U.S. at 396 (emphasis supplied). When a criminal defendant seeks to bring a § 1983 civil claim arising out of the same factual predicate as a concurrent criminal case, "it is within the power of the district court, and in accord with *common practice,* to stay the civil action until the criminal case or likelihood of a criminal case is ended." *Id*. at 393-94 (emphasis supplied). *See Watts v. Epps*, 475 F. Supp. 2d 1367, 1369 (N.D. Ga. 2007) ("*Wallace* teaches that it is the issuance of a stay – and not the tolling of an action – that is the appropriate prophylactic device to prevent federal courts from undercutting state criminal convictions…"). *See also*, *Salas v. Pierce*, 297 F. App'x 874, 877 (11th Cir. 2008) (per curiam) ("The Supreme Court has held that equitable tolling is not 'appropriate to avoid the risk of concurrent litigation' in a § 1983 action") and *Overstreet v. Georgia*, 2022 U.S. App. LEXIS 24827, *12 (11th Cir., Sept. 2, 2022) (per curiam) (citing

*Wallace* for the proposition "that tolling is not 'appropriate to avoid the risk of concurrent litigation.'").

Plaintiff fails to point the undersigned to any authority directly supporting his position that tolling should be applied on the above-described basis. Rather, Mr. Pettway simply points to *Ward* for an assertion that "equity would make the rigid application of a limitation period unfair" in the present case, 46 So. 3d at 888, and *Irwin* for its principle that tolling may be available in circumstances "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." 498 U.S. at 96. (Doc. 12, PageID.155). However, neither citation is persuasive.

First, Plaintiff's invocation of *Irwin* is misplaced. The *Irwin* Court, after noting tolling is sparingly applied, explains the doctrine may be applied in two types of situations: (1) "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period," or (2) "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." 498 U.S. at 96 (citations and footnotes omitted). The first circumstance is inapplicable to Mr. Pettway's case, as he has not asserted any pleadings were filed during the statutory period, defective or otherwise. Rather, he argues the State induced the passage of the limitations period by way of its litigation decisions, including an alleged delay in producing discovery, prosecutor reassignments and the filing of a motion to quash, which was set for a hearing the same week that the limitations period for many of Mr. Pettway's claims was set to

expire. (Doc. 36, PageID.244-45).

However, "equitable tolling is reserved for cases involving some affirmative misconduct or deception on the party of the adverse party." *Zamudio v. Haskins*, 775 F. App'x 614, 616 (11th Cir. 2019) (per curiam). *See Jackson v. Astrue*, 506 F.3d 1349, 1357 (11th Cir. 2007) (noting "traditional equitable tolling principles require that the claimant demonstrate extraordinary circumstances, such as fraud, misinformation, or deliberate concealment."). Indeed, both cases alluded to by the *Irwin* Court involved affirmative misrepresentations which directly impacted a plaintiff's ability to timely file. 498 U.S. at 96, n.2.[12] While a basis for tolling may exist "when the State's conduct prevents a petitioner from timely filing," *Lawrence v. Florida*, 421 F.3d 1221, 1226 (11th Cir. 2005), there is no basis for Mr. Pettway's claim that that the limitations period(s) "were allowed to pass due to his adversary's inducement." (Doc. 36, PageID.245). The State's litigation decisions are not examples of affirmative misconduct, and at no point does Mr. Pettway allege he was misled, lied to or otherwise deceived by the State about when and how to file a timely § 1983 action. Even assuming *arguendo*, that there was some nefarious intent behind the State's litigation tactics, there is no casual connection between those alleged acts and Mr. Pettway's ability to timely file his § 1983 action. *See Lawrence* at 1226-27 (explaining causation requirement). Mr. Pettway was faced with a choice, and he chose to wait.

---

[12] *See Glus v. Brooklyn*, 359 U.S. 231 (1959) (declining to dismiss FELA action based solely upon lapsed limitations period when plaintiff was "justifiably misled into a good-faith belief" by his employer that FELA limitations period was seven years, as opposed to three) and *Holmberg v. Armbrecht*, 327 U.S. 392 (1946) (reversing dismissal of equity action brought by creditors to enforce shareholder liability under FFLA when it was alleged that defendant intentionally held shares under different name).

As a result, the limitations period expired on many of his claims, and this was through no fault of the State.

As to Plaintiff's invocation of *Ward*, application of the limitations period to Mr. Pettway's case is not unfair. In fact, the Alabama Court of Civil Appeals addressed a situation with factual similarity in *McConico v. Patterson*, 204 So. 3d 409 (Ala. Civ. App. 2016), affirming a trial court's dismissal of state law tort claims as untimely. The *McConico* plaintiff was fired from her job with the City of Leeds after an investigation found her responsible for misappropriation of city funds. *Id*. at 413. Criminal charges were brought against her and subsequently nolle prossed. *Id*. The plaintiff later filed suit, bringing several state law tort causes of action, including negligence/malice, wrongful death of her unborn child, malicious prosecution, libel/defamation and conspiracy. *Id*. The trial court dismissed all claims (with the exception of malicious prosecution) as untimely under Ala. Code § 6-2-38. *Id*. On appeal, plaintiff argued the limitations period should be tolled because "during the time the limitations period was running as to those claims, she was being prosecuted in criminal court, and the speed with which the criminal case proceeded and the results of the criminal case were beyond her control." *Id*. at 418. However, the *McConico* Court disagreed, and in addressing plaintiff's argument, stated:

> In her brief to this court, McConico cites no authority to support her contention that the applicable statutes of limitations were tolled because the criminal case was being litigated while her time to file those claims was running. She also fails to provide us with any explanation as to why the criminal case would prevent her from moving forward with a civil action on the claims other than the malicious-prosecution claim.

*Id*. at 418-19.

Apart from his misplaced reliance on *Irwin*, Mr. Pettway similarly fails to offer any authority in support for his contention that the applicable limitations period(s) should be tolled because he was also involved in a concurrent criminal case against him. Though he does provide some explanation as to why his criminal case prevented him from bringing his § 1983 action in a timely manner: his Fifth Amendment rights. However, Plaintiff's assertion that his Fifth Amendment rights would have been infringed upon by timely bringing his § 1983 action is entirely hypothetical. He did not attempt to bring his action in a timely manner, and if he had, common practice would have been for his § 1983 action to be stayed pending resolution of the concurrent criminal proceedings, thereby preserving his Fifth Amendment rights. *Wallace*, 549 U.S. at 393-94.

In sum, the undersigned finds Plaintiff has not carried his burden nor provided a sufficient basis to warrant tolling of the limitations period(s) as it relates to those otherwise untimely claims. Accordingly, the undersigned **RECOMMENDS** Counts I, III, IV, V, VI (except as to malicious prosecution), VII and X be **DISMISSED with prejudice** as to all Defendants therein named.

## B. Remaining Claims

Having determined Mr. Pettway's untimely claims do not warrant equitable tolling, only Count II (malicious prosecution) and Count VI (to the extent it asserts a *Monell* claim based on malicious prosecution) remain. Initially, the undersigned notes that the City Defendants do not seek dismissal of Officers Pettway and Shelton, nor Sgt. Young from the allegations of Count II. Accordingly, Mr. Pettway's federal § 1983

malicious prosecution claim shall proceed against these Defendants in their respective individual capacities.

However, the remaining claims are best described by the City Council's motion to dismiss as "not a model of clarity." (Doc. 7, PageID.87). On one hand, Plaintiff clearly seeks to hold The City itself liable pursuant to a *Monell* theory of municipal liability based upon unofficial custom and practice allegations that resulted in his malicious prosecution. (Doc. 1, PageID.25-28). In asserting his *Monell* claim, he explicitly identifies Mayor Stimpson and the City Council as "decision making Defendants," (Doc. 1, PageID.27), or those with "final policymaking authority." However – while not explicitly stated in the complaint – Mr. Pettway also appears to seek individual liability from Mayor Stimpson, the City Council, Chief Battiste and Cmdr. Greeley under a theory of supervisory liability based on the acts and/or omissions of the officers which resulted in his malicious prosecution. Whether the lack of clarity is the result of inartful pleading or a blended analysis, in any event, Mr. Pettway fails to state a claim in both regards.

### 1. *Supervisory Liability*

The standard for imposing supervisory liability pursuant to § 1983 is "extremely rigorous." *Piazza v. Jefferson Cty.*, 923 F.3d 947, 957 (11th Cir. 2019) (citation omitted). As the Eleventh Circuit set out in *Gray v. Bostic*:

> Supervisory officials cannot be held liable under § 1983 for the unconstitutional actions of their subordinates based on respondeat superior liability. *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). Instead, supervisors can be held personally liable when either (1) the supervisor personally participates in the alleged constitutional violation, or (2) there is a causal connection between the actions of the

supervisor and the alleged constitutional violation. *Id*.

458 F.3d 1295, 1308 (footnote omitted). Neither Mr. Pettway's complaint nor opposition response asserts that any of the identified "decision makers" personally participated in his malicious prosecution. Rather, he proceeds via the second route by attempting to establish a causal connection between the acts/omissions of these Defendants and the alleged constitutional violations.

The City Defendants argue that any allegations against Chief Battiste, Mayor Stimpson or Cmdr. Greeley under this theory are solely based on conclusory pattern and practice allegations, and therefore, such claims cannot be maintained pursuant to *McCullough v. Finley*, 907 F.3d 1324 (11th Cir. 2018). (Doc. 24, PageID.198-201). Additionally, the City Defendants' motion asserts that Mayor Stimpson and Chief Battiste are entitled to qualified immunity (Doc. 24, PageID.199), and avers that Plaintiff's claim against Cmdr. Greeley cannot be maintained for the additional reason that "a plaintiff may not base a custom or policy claim of liability for supervisors on a single prior incident." (Doc. 24, PageID.200) (citing *Hays v. Curry*, 2016 U.S. Dist. LEXIS 149447 (N.D. Ala. 2016)).

In his response, Mr. Pettway points the Court to the MPD's publicly available annual reports from 2017-2021 regarding citizen's complaints and argues that the statistics contained therein establish a pattern of "covering up, disposing of, or otherwise sweeping under the rug the legitimate complaints of citizens within their jurisdiction." (Doc. 36, PageID.246). According to Mr. Pettway, Chief Battiste and Mayor Stimpson are "directly and/or incidentally responsible" for this pattern

"through either malicious machinations or deliberate indifference," and Cmdr. Greeley is "complicit as a necessary member in the chain of command for reporting and investigating complaints from the citizens within the City of Mobile." (Doc. 36, PageID.246-47). Mr. Pettway asserts each of these three Defendants were "a necessary link in the chain creating a causal connection between the actions of the officers and the ratification of unlawful behavior by supervisors and those officers." (Doc. 36, PageID.247).

In order to establish the requisite causal connection to impose supervisory liability, a plaintiff must "demonstrate[] that a supervisor's policy or custom resulted in 'deliberate indifference to constitutional rights.'" *Piazza*, 923 F.3d at 957 (citation and footnote omitted). A plaintiff can also point to the absence of a policy resulting in a violation of constitutional rights. *Id.* (citation omitted). "Either way, though, to prove that a policy or its absence caused a constitutional harm, a plaintiff must point to multiple incidents, or multiple reports of prior misconduct by a particular employee." *Id.* (internal citations omitted). Mr. Pettway attempts to use the MPD's annual report on citizen's complaints to establish that a pattern or practice exists of covering up or otherwise not fully investigating those complaints, and that this pattern was the result of "either malicious machinations or deliberate indifference" on the part(s) of Mayor Stimpson, Chief Battiste and Cmdr. Greeley. However, his use of these reports is not persuasive for a number of reasons.

First, Mr. Pettway has not provided any detail or specifics as to how Chief Battiste, Mayor Stimpson and Cmdr. Greeley are connected to the investigation

and/or disposition of citizen's complaints, other than asserting in a conclusory manner that they must be by virtue of their respective roles as Chief of Police, Mayor of the City and Commander of the Fourth Precinct. This alone is enough to dismiss his claims on a theory of supervisory liability against these Defendants. *See McCullough*, 907 F.3d 1334 (explaining that "allegations that government officials were the 'principal architect' and 'instrument[]' behind an unlawful policy, without supporting allegations, are conclusory."). Moreover, he fails to provide insight into the process for collecting, processing, investigating or disposing of such complaints, and presents the MPD's reports in a misleading way. In seeking to establish the requisite policy or custom which resulted in a deprivation of rights, he argues:

> By the [MPD]'s own reported numbers; in 2021, 45 complaints were made of excessive force or wrongful arrest, with 0 findings of improper conduct; in 2020, 21 complaints for the same found only 3 incidents of improper conduct; 2018, 18 complaints of the same again produced 0 findings of improper conduct; 2017 produced 40 complaints of excessive force or wrongful arrest, and again, 0 findings of improper conduct.

(Doc. 36, PageID.147). However, this statement does not give the full picture of the MPD's reports. For example, Mr. Pettway represents there were 45 complaints of excessive force or wrongful arrest made in 2021, but that is not what the MPD's report shows.[13] According to the MPD's report, *see* n.14, there were 100 complaints filed in 2021. *Id*. Of those 100 complaints, there were 225 "areas of concern" noted (each complaint can include more than one area of concern). Of those 225 areas of concern, a total of 45 relate to "force" or "arrest" – notably not *excessive* force or *wrongful*

---

[13] Each of the annual reports on citizen's complaints are available for viewing on the MPD's website at: https://www.mobilepd.org/stats-reports. (Last visited, Feb. 9, 2023).

arrest. *Id.* Thus, based on the MPD's report, there is simply no way to determine how many complaints were filed on the basis of excessive force or wrongful arrest. *Id.* Moreover, Mr. Pettway asserts there were "0 findings of improper conduct," based on the unknown number of complaints implicating the 45 areas of concern relating to force or arrest. *Id.* While this statement is technically correct, it again does not paint the full picture. Of the 45 areas of concern relating to force or arrest, only 20 were disposed of based on "proper conduct;" the remaining 24 were determined to be "unfounded" (meaning they had no basis in law or fact to begin with) and one was disposed of on a basis of insufficient evidence. *Id.* In sum, Mr. Pettway's use of these reports fails to establish any custom or practice, let alone one which could impute supervisory liability onto Chief Battiste, Mayor Stimpson and Cmdr. Greeley based upon their deliberate indifference to it.

Finally, to the extent Plaintiff seeks to hold individual members of the City Council (past or present) liable under a theory of supervisory liability, the undersigned finds that those individual members of the City Council are shielded from liability under the doctrine of absolute legislative immunity, which was invoked by the City Council's motion to dismiss (Doc. 7), and not responded to by Plaintiff. Under the doctrine of legislative immunity, "[l]ocal legislators are entitled to absolute immunity from § 1983 for their legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). Absolute legislative immunity applies when legislators "are acting within their legislative roles, performing legislative acts." *Woods v. Gamel*, 132 F.3d 1417, 1420 (11th Cir. 1998) (cleaned up). This immunity "attaches to all action taken

in the sphere of legitimate legislative activity," *Bogan*, 523 U.S. at 54 (citation omitted), and "[a]n act is deemed legislative, rather than administrative or managerial, when it is policymaking and of general application." *Woods*, 132 F.3d at 1420 (citation omitted).

Mr. Pettway's complaint does not identify any specific actions taken by the City Council or its individual members which directly resulted in a deprivation of Plaintiff's rights. Rather, he generally argues that the City Council are "decision makers responsible in part for written and unwritten customs, policies and procedures followed by the [MPD]," (Doc. 1, PageID.7), and that those individuals were "on notice" of the MPD's unconstitutional practices. (Doc. 1, PageID.27). The City Council notes these allegations are "sparse to the point of insubstantiality," (Doc. 7, PageID.93), and argues "[p]laintiff has only accused the Council of inaction in the administration of the [MPD]." (Doc. 7, PageID.95). However, the City Council also notes direct administration of the MPD is not within its purview and points the undersigned to the Zoghby Act, Ala. Code §§ 11-44C-1 *et seq.*, which defines the powers and responsibilities of Mobile's Mayor-Council government. Under the Zoghby Act, "all matters of legislative policy shall be vested in the council." Ala. Code § 11-44C-21. And while this act permits the City Council to "inquire into the conduct of any office, department or agency of the city and make investigations as to municipal affairs," it also specifically forbids the City Council from engaging in certain administrative activities. *See id.* ("Except for the purpose of inquiry, the members of the council shall deal with the administrative service only through the Mayor.").

The undersigned finds the City Council's citation to the Zoghby Act to be persuasive, and again notes that Mr. Pettway failed to file any response in opposition to the City Council's motion. As such, because Mr. Pettway has not argued that the action or inaction of the City Council and/or its members was anything other than legislative, the invocation of absolute legislative immunity shields the councilmembers from liability in the present action.

### 2. *Monell Liability*

Pursuant to *Monell* and its progeny, municipalities like the City of Mobile "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief, where (*sic.*) the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. at 690 (footnote omitted). However, "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *Baxter v. Roberts*, 54 F.4th 1241, 1269 (11th Cir. 2022) (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)) (emphasis in original). *See Bd. of the Cnty. Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of respondeat superior." (citations omitted)).

To make a case for *Monell* liability, a plaintiff must show: "(1) that his constitutional rights were violated;[14] (2) that the municipality had a custom or policy

---

[14] To establish a federal malicious prosecution claim under § 1983, a plaintiff "must prove a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to the elements of the common law tort of malicious prosecution." *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003) (citations omitted). Because the City Defendants do not seek dismissal of Count II, there has been no

that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown,* 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton,* 489 U.S. at 388). There are several routes by which a plaintiff can seek to do so, and the Eleventh Circuit has identified at least three: "(1) identifying an official policy; (2) identifying an unofficial custom or widespread practice that is so permanent and well settled as to constitute a custom and usage with the force of law; or (3) identifying a municipal official with final policymaking authority whose decision violated the plaintiff's constitutional rights." *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1229 (11th Cir. 2022) (citation omitted). Mr. Pettway does not point the Court to any official policy nor to a single decision made by an official with final policymaking authority that resulted in his malicious prosecution. (*See generally*, Doc. 1). Rather, he proceeds via the "unofficial custom or widespread practice" route.

However, a threshold consideration – regardless of the route taken – is the identification of the custom of policy alleged to have resulted in the injury. *See Brown*, 530 U.S. at 403-04 (noting this requirement "ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality."). Mr. Pettway at no point succinctly states that The City has an

---

opportunity to address the merits of that claim. Moreover, because Count II will move forward, the undersigned declines to address the merits here. Rather, for purposes of Mr. Pettway's *Monell* claim only, the undersigned will infer Plaintiff's constitutional rights were violated. *See McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citation omitted) (noting the violation of a constitutional right as the first prong of the test for *Monell* liability). This inference does not otherwise impact the viability of Mr. Pettway's *Monell* claim, because it fails on other grounds as stated herein.

unofficial custom or practice of maliciously prosecuting its citizens; instead, he asserts other patterns or practices were the direct and proximate cause of his malicious prosecution, including the detention of individuals without probable cause, falsification police reports, planting evidence and ignoring or failing to investigate citizen's complaints, and that "decision makers" Mayor Stimpson, Chief Battiste, the City Council and Cmdr. Greeley were "on notice" of these patterns and practices, and either encouraged them, permitted them, acquiesced to them and/or failed to correct them. (Doc. 1, PageID.25-28). This aggregated view of other alleged violations resulting in malicious prosecution is reiterated in his opposition response to the City Defendants' motion to dismiss. (*See* Doc. 36, PageID.248 ("[T]he City of Mobile has a custom, policy, and practice of covering up abuses of its' officers, and has ratified their unlawful actions or callously disregarded their abuses of the residents of the City." (citing Doc. 1, PageID.14-17))).

The City seeks to dismiss Mr. Pettway's *Monell* claim on the basis that his allegations are conclusory and limited to the facts of his case. (Docs. 24, 37). To hold a municipality liable on the basis of a custom or practice allegation, the custom or practice must be "so pervasive and well-settled that it assumes the force of law." *Denno ex rel. Denno v. School Bd.*, 218 F.3d 1267, 1276 (11th Cir. 2000) (citations omitted). *See Grech*, 335 F.3d at n.6 (noting that "[a] single incident would not be so pervasive as to be a custom or practice") *and City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("[A] single incident of unconstitutional activity is not sufficient to impose liability under *Monell*."). The Eleventh Circuit has further made clear that

"[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability" and that "[a] pattern of similar constitutional violations … is 'ordinarily necessary.'" *Craig v. Floyd County,* 643 F.3d 1306, 1310 (11th Cir. 2011) (citations omitted). *See id.* ("A single incident would not be so pervasive as to be a custom, because a custom must be such a longstanding and widespread practice that it is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." (citations, internal quotations and alterations omitted)).

To the extent Mr. Pettway seeks to use the MPD's annual reports on citizen's complaints to show a custom or practice of "covering up abuses of its' officers," (Doc. 36, PageID.248), the undersigned finds use of those statistics to be unpersuasive for the same reasons previously discussed. And beyond his reference to those numbers, each of the allegations as set out in his complaint relate only to the single incident in which Mr. Pettway was personally involved, which is insufficient to establish a custom or pattern by which deliberate indifference can be inferred. *See Craig,* 643 F.3d at 1311 ("In the absence of a series of constitutional violations from which deliberate indifference can be inferred, the plaintiff[] must show that the policy itself is unconstitutional." (citation omitted)). Because Mr. Pettway cannot show "a series of constitutional violations" without relying upon conclusory pattern and practice allegations, he has failed to state a claim under *Monell*.

## V. Conclusion

In sum, and for the reasons stated herein, the undersigned **RECOMMENDS** the following: (1) that each of the motions to dismiss (Docs. 7, 8, 24) be **GRANTED,**

(2) that Counts I, III, IV, V, VI, VII, VIII, IX and X be **DISMISSED with prejudice** in their entirety as to all Defendants therein named, and (3) that Count II's federal § 1983 malicious prosecution claim proceed as to Defendant Officers Pettway and Shelton, as well as Sgt. Young in their respective individual capacities.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within 14 days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 20th day of March 2023.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**